TRUST NO. L. B. 791–A, J. B. BARBER ET AL., BENEFICIARIES, SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108633. Promulgated March 9, 1943.

*Arthur McGregor, Esq.*, for the petitioner.
*B. M. Coon, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* The Commissioner has determined the following deficiencies:

| | 1937 | 1938 | 1939 |
|---|---|---|---|
| Income tax | $194.67 | $160.85 | $106.45 |
| Excess profits tax | 161.78 | 154.41 | 102.19 |

The only issue is whether petitioner is an association taxable as a corporation. Petitioner pleads *res judicata* and in addition attacks the Commissioner's determination on the merit. Fiduciary income tax returns for the years involved were filed with the collector for the sixth district of California.

At the hearing petitioner produced capital stock tax returns covering the years before us. Though delinquent, they declared capital stock valuations sufficient to save petitioner from the excess profits tax deficiencies. Respondent concedes on brief "that the petitioner is entitled to the benefits accruing from the filing of its belated capital stock tax returns." We therefore hold, regardless of the decision on the first issue, that petitioner is not liable for the deficiencies in excess profits tax. *Del Mar Addition* v. *Commissioner*, 113 Fed. (2d) 410.

The Board of Tax Appeals entered a memorandum opinion in Docket No. 54126 on February 27, 1934, in which it adjudged that the trust involved herein was not an association taxable as a corporation upon its income for the years 1923, 1927, and 1928. Decision was thereafter entered pursuant to the memorandum opinion, which became final, no appeal therefrom having been taken. The facts were presented to the Board in that proceeding by stipulation. In the instant case the record of the former proceedings, consisting of the pleadings, the stipulation, the memorandum opinion, and the decision, have been introduced in evidence; and it is stipulated that the facts in this and in the former case and the method of operation of the trust during the present tax years and in the years previously before the Board are the same.

The facts as stipulated in the prior case are substantially as follows:

In 1922 sixty-two persons invested $35,000 in cash to pay for certain land conveyed to the Pacific-Southwest Trust & Savings Bank (later succeeded by the Security First National Bank of Los Angeles) to hold in trust for themselves as certificate holders. The land was known as lots 16, 17, and 18 in block "B" of the Butler Tract in Los Angeles County. A declaration of trust was executed, providing in part as follows:

At the time of the execution of this Declaration of Trust it is contemplated that the property covered hereby will be leased for gas, oil, or mineral products. In

order to facilitate the execution of such a lease, it is hereby provided that a committee of five (Beneficiaries herein), be authorized to direct the Trustee herein in the execution of such a lease or any subsequent oil, gas or mineral lease on said land. * * * [The committee was specifically named in the trust deed.]

\* \* \* \* \* \* \*

It is understood and agreed that the Trustee hereunder shall be entitled to receive any and all royalties or dividends from any gas, oil, or mineral lease covering the trust property. Distribution of all such moneys so received to be made to the Beneficiaries hereunder according to their respective interests herein.

\* \* \* \* \* \* \*

The trustee was given authority to "rent, lease, for other than gas or oil purposes, sell or convey said property or any portion thereof, to such person or persons at such prices and upon such terms as the Beneficiaries representing a seventy (70) per cent holding interest herein may direct in writing * * *." The trustee could encumber the trust estate only upon similar approval of 70 percent in interest of the beneficiaries. The beneficiaries bound themselves, if the funds of the trust should prove insufficient at any time, to pay to the trustee amounts necessary to discharge any debt, cost, or expense of the trust, and the trustee was authorized to assess the beneficiaries therefor.

On September 28, 1922, the trustee, as owner of lots 16, 17, and 18, and one Butler and his wife, owners of lots 15, 19, 20, 21, 22, and 23 of the same block, as lessors, executed a community lease to William Loftus, lessee. The lessors were to receive a royalty of 40 percent, in cash or kind, of all oil and gas produced from the property. The 40 percent was to be divided two-thirds to the Butlers and one-third to petitioner. The lessee was to operate under the lease at its own expense and the lease was to run for twenty years and as long thereafter as oil, gas, or kindred substances were produced in paying quantities. The lessee assigned the lease to the Federal Producing Co., which quitclaimed lots 15, 19, 20, 21, 22, and 23 to the Butlers. On November 17, 1924, the lease was modified by eliminating therefrom all but lots 16, 17, and 18, and as consideration for the lessee deepening the well the royalty of 40 percent was reduced to 16⅔ percent, one-half of which was payable to petitioner and one-half to the Butlers. On June 15, 1927, the trustee and the Butlers executed a new lease to Loftus and Graham covering lot 15, the lease providing for a royalty of 16⅔ percent, one-half of which was payable to petitioner and one-half to the Butlers.

The committee provided for in the declaration of trust gave written instructions to the trustee with respect to the execution of the two leases and modification of one thereof, as outlined above. One change in the personnel of the committee was made in the manner outlined in the trust deed, occasioned by the death of one of the members of the committee.

The income of the trust was distributable to the beneficiaries according to their respective interests therein, which were evidenced by certificates of interest. These certificates were transferred from time to time. The trustee never encumbered the trust property. It never received any royalty in kind, but received its royalties in cash, and after deducting its fee and other minor expenses of the trust, distributed the balance to the beneficiaries. No formal meetings were ever held by the beneficiaries. The petitioner had no name, place of business, seal, bylaws, officers, or statutory charter.

In its prior opinion the Board stated:

On reading the above facts it is clear that the petitioner is entitled to prevail. The trust bore no resemblance in form or operation to an association or a corporation. It comes within a long line of cases decided by the Board and the courts. *Myers, Long & Co.*, 14 B. T. A. 460; *Extension Oil Co.*, 16 B. T. A. 1028, affd. 47 Fed. (2d) 65; *Royal Syndicate*, 20 B. T. A. 255; *Ray Oil Co.*, 28 B. T. A. 1205; *Galbreath Lease, Trust No. 314*, 24 B. T. A. 1107. After the execution of the lease the only activity of the trust was to receive and distribute the income from the lease. Except for directing as to the execution of the lease the beneficiaries had no control over the trustee. See *Galbreath Lease, Trust No. 314, supra*.

The Commissioner is met at the threshold by petitioner's plea of *res judicata.* Inasmuch as taxes of different years are involved, the subject matter of this action is a "different claim or demand" from that previously before the Board, and the inquiry raised by the plea is therefore "whether the point or question to be determined * * * is the same as that litigated and determined in the original action." *Tait* v. *Western Maryland Railway Co.*, 289 U. S. 620. The question presented is whether petitioner for tax purposes is a trust or an association. That was the question previously adjudicated. The parties are the same; the facts and method of operation of the trust are the same; and the statutory definition of "association" is the same. The only difference, and upon this respondent's entire case rests, is that the regulations have been changed in the meantime. Respondent's counsel states of the regulation: "They are the law"; hence, the law has changed and a new issue is before us, differing from the one previously adjudged.

We do not share respondent's view of the regulations under consideration. The articles involved here, defining an association and distinguishing it from a trust, are not legislative regulations but are merely interpretative, to be used as an aid in construing the meaning of vague and indefinite statutory language. No doubt they are entitled to weight, and would be entitled to greater weight if they represented a uniform and unchanged construction of the statute. But, as respondent aptly points out, "Congress left to the judgment of the administrative authorities *and to the courts* the meaning of 'associa-

tion.' Congress merely indicated a classification and did not provide the structure. It was left to the Treasury Department *and to the courts* to provide the framework and structure of the definition." (Emphasis added.) The Supreme Court has gone a long way in providing that framework. *Crocker* v. *Malley*, 249 U. S. 223; *Hecht* v. *Malley*, 265 U. S. 144; *Morrissey* v. *Commissioner*, 296 U. S. 344, and companion cases. And the respondent concedes here that the Commissioner "has amended and enlarged his definitions of 'trust' and of 'association' to correspond to the definitions of the Supreme Court."

In *Pryor & Lockhart Development Co.*, 34 B. T. A. 687, the question was whether a trust was taxable as a corporation for the year 1929, the Board having held in a prior case that it was not as to the years 1925 to 1928, inclusive. The Board said:

Respondent argues that the recent decisions of the Supreme Court in *Commissioner* v. *Coleman-Gilbert Associates*, 296 U. S. 369; *Morrissey* v. *Commissioner*, idem 344; *Swanson* v. *Commissioner*, idem 362; and *Commissioner* v. *Combs*, idem 365, destroy the validity of this plea [of res judicata] here. The answer is that those cases obviously could not and did not change the statutory law. *New Orleans* v. *Citizens' Bank*, 167 U. S. 371. So the identity of the issue in the two proceedings is not disturbed. And, assuming without holding that the adjudication in the earlier proceedings was wrong, in the light of those recent Supreme Court decisions, that would not affect the validity of petitioner's plea here. The question involved here may or may not have been adjudicated correctly in the former proceedings, but it was legally adjudicated, and such adjudication has become final. That is the essence of the plea. *United States* v. *Guaranty Trust Co. of New York*, 76 Fed. (2d) 747; *Art Metal Construction Co.* v. *United States*, 13 Fed. Supp. 756; *Sand Springs Railway Co.*, *supra*. [31 B. T. A. 392.]

It would be an anomaly to give effect to the doctrine of *res judicata* notwithstanding an interim Supreme Court decision which may or may not have disclosed that the prior adjudication was erroneous, and yet refuse to do so simply because the Commissioner has incorporated in his regulations the principles announced by the Court. Particularly is this so where the regulations themselves are merely interpretative. "The difficulty with the regulations as an exposition was that they themselves required explication * * *" *Morrissey* v. *Commissioner*, *supra*. On its plea of *res judicata* petitioner is sustained.

While what has been said serves to dispose of this case, it may not be amiss to state our opinion that, as a matter of first impression, the decision of the Supreme Court in the *Morrissey* case and the amended regulations do not require a conclusion in the case at bar different from that reached in the former proceedings, that petitioner is to be taxed as a trust and not as a corporation.

*Decision will be entered for the petitioner.*